UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAVON J.J.,[1]

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,

Respondents.

No. 1:26-cv-03104-TLN-SCR

A# 242-390-009

**ORDER**

This matter is before the Court on Petitioner Javon J.J.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed a Motion to Dismiss. (ECF No. 9.) For the reasons set forth below, the Petition for Writ of Habeas Corpus is GRANTED IN PART (ECF No. 1) and Respondents are ordered to provide Petitioner a bond hearing.

///

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background[2]

On February 10, 2024, Petitioner was admitted to the United States on a B-2 visitor visa and overstayed beyond the period authorized. (ECF No. 9-1 at 2.) On July 19, 2024, after Petitioner pleaded guilty, a court in the Bahamas convicted Petitioner of armed robbery, possession of an unlicensed firearm, and possession of ammunition. (ECF No. 9-3 at 3.) The court imposed concurrent sentences of eighteen years, twelve years, and ten years of confinement, respectively, "with effect from the date of apprehension of [Petitioner]." (*Id.*)

On November 20, 2024, Petitioner filed an application for asylum, which remains pending. (ECF No. 9 at 2.) Since entering the United States, Petitioner has started a family with his partner, who is five months pregnant. (ECF No. 1 at 6.)

On March 30, 2026, United States Border Patrol agents received information from the U.S. Customs and Border Protection Office of Intelligence that Petitioner had overstayed his visa. (ECF No. 9-1 at 2.) Petitioner also had a system alert identifying him as a fugitive because of his armed robbery and other 2024 convictions. (*Id.*) Later that day, Border Patrol agents detained Petitioner and served him with a Warrant for Arrest of Alien. (*Id.*; ECF No. 9-2 at 1.) On April 9, 2026, Petitioner was served with a Notice to Appear and placed in removal proceedings. (ECF No. 9-4 at 1.) Petitioner is not subject to a final order of removal. (ECF No. 9 at 2.)

Petitioner is currently detained at the Golden State Annex Detention Facility. (ECF No. 1 at 2.) Petitioner has been detained ever since his arrest, and Respondents have not provided him a bond hearing. (*Id.*) Petitioner challenges the lawfulness of his civil detention and argues his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

---

[2] These facts are either set forth in Respondent's briefing or are not disputed.

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16.) Respondents argue the Petition should be dismissed on two grounds: (1) there is no justiciable case or controversy, and Petitioner's claim is not ripe, because Petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a), is therefore entitled to a bond hearing, and has not requested one from the immigration court; and (2) Petitioner failed to satisfy the prudential exhaustion requirement by first requesting a bond hearing before an immigration judge. (ECF No. 9.) The Court addresses Respondents' threshold arguments before turning to the merits of Petitioner's due process claim.

### A. Justiciability and Exhaustion

The Court rejects Respondents' justiciability and exhaustion arguments. Petitioner has been detained for more than four months without any bond hearing or individualized custody determination. That ongoing detention is an actual and continuing injury that an order directing a bond hearing would redress — not an abstract, hypothetical, or speculative dispute as Respondents argue. See *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (requiring a habeas petitioner to show "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision") (citation modified). Whether Petitioner should first have requested a hearing from the immigration court is a question of exhaustion, not Article III justiciability. The Court turns to that question.

Under the exhaustion doctrine, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *S.E.C. v. G. C.*

*George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (quoting *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51 (1938)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds). However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Nevertheless, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

Here, the Court finds the *Puga* factors do not support the need for prudential exhaustion. First, an administrative record is not necessary to reach a proper decision on Petitioner's due process claim. Second, waiver will not encourage the deliberate bypass of the administrative scheme in future cases because it is not clear whether Petitioner was ever provided a meaningful opportunity to request bond or even informed of his right to so request. Despite this Court ordering any custody warrants or notices pertaining to Petitioner's detention (ECF No. 6), the government did not provide the Notice of Custody Determination (DHS Form I-286), which contains a space for noncitizens to request a bond hearing in writing. Further, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only

have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).

Even if exhaustion were required, waiver would be appropriate to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025). Petitioner is suffering irreparable harm as a result of his continued detention which would unnecessarily continue without waiver of exhaustion. Accordingly, the Court will not dismiss the Petition for failure to exhaust and turns to the merits.

B. Due Process

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain

a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See*, *e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Here, Petitioner was admitted to the United States on February 10, 2024, and lived at liberty in this country for more than two years before Respondents detained him. During that time, Petitioner started a family with his partner, who is now five months pregnant, and filed an application for asylum that remains pending. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Thus, Petitioner has a liberty interest in his freedom from physical restraint protected by the Due Process Clause. The Court next considers what process was owed to Petitioner.

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds these factors favor a bond hearing at minimum. The Court will address each of these factors in turn.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondent's actions in detaining him. The two years that Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has now been detained for over four months without any opportunity to be heard as to the justification

of his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been affected by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *7 (E.D. Cal. Aug. 15, 2025) (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). Respondents do not argue that Petitioner is a danger to the community or a flight risk. (*See* ECF No. 9.) However, Respondents provide documentation that Petitioner was convicted of armed robbery in the Bahamas, he must serve a sentence of eighteen years, and there is a Commonwealth of the Bahamas bench warrant for Petitioner. (ECF No. 9-3.) The Court cannot say on this record that Petitioner's detention is erroneous, and it is not this Court's role to determine whether Petitioner is a danger or flight risk. However, additional procedural safeguards would be probative to determine whether Petitioner's detention is justified and to mitigate the risk of erroneous deprivation. *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025).

Finally, the government's interest in detaining Petitioner without a hearing is low, and the effort and cost required to provide Petitioner with procedural safeguards are negligible. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). "While the Government's interest in enforcing the nation's immigration laws is significant, that interest is not at stake here; instead, it is the much lower interest in detaining [Petitioner] pending removal without a bond hearing." *Perera II*, 598 F. Supp. 3d at 746 (citing *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). "Requiring the government to provide [Petitioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk." *Perera I*, 2021 WL 2400981, at *5. Here, there is no final order of removal for Petitioner. As discussed above, no neutral arbiter has found Petitioner to be a danger to society or a flight risk.

Moreover, the cost and time of procedural safeguards are minimal here. Bond hearings are routine processes for Respondents and carry minimal burden. Indeed, a bond hearing is required under 8 U.S.C. § 1226(a), which Respondents concede governs Petitioner's detention. (ECF No. 9 at 2.)

On this record, the *Mathews* factors demonstrate that the Fifth Amendment Due Process Clause entitles Petitioner to a bond hearing, at a minimum. *See Carballo*, 2025 WL 2381464, at *8. Respondents have not provided such a hearing and are continuing to deny him one. Therefore, Respondents have denied Petitioner the "fundamental requirement of due process . . . the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. Accordingly, Petitioner is entitled to relief on his due process claim in the form of a bond hearing.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED IN PART.
2. Respondents' Motion to Dismiss the Petition (ECF No. 9) is DENIED.
3. Respondents are ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven (7) days** from the date of this Order (unless Petitioner seeks additional time to prepare) without a bond hearing before a neutral factfinder at which Respondents bear the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. The factfinder must consider alternative conditions of release and Petitioner's financial circumstances in setting bond. At any such hearing, Petitioner shall be allowed to have counsel present. If Petitioner is not found to be a danger to society or flight risk, or alternatives to detention can mitigate those risks, Respondents must immediately release Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the neutral factfinder at the hearing.

4. Within **two (2) court days** from the date of the bond hearing, Respondents must file a **notice of compliance** with this Court's Order and identify Petitioner's custody status and the outcome of any hearing.

5. If Petitioner is released, Respondents are further ENJOINED from re-detaining Petitioner absent material changed circumstances and compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where Respondents show by clear and convincing evidence (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: August 14, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE